Brian S. King, #4610
Brent Newton, #6950
Nediha Hadzikadunic, #15851
**BRIAN S. KING, P.C.**
336 South 300 East, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CANDACE B., MARK E., and J. E., <br><br> Plaintiffs, <br><br> vs. <br><br> BLUE CROSS and BLUE SHIELD of RHODE ISLAND, <br><br> Defendant. | COMPLAINT <br><br> 2:19-cv-00039 DBP |

Plaintiffs Candace B. ("Candace"), Mark E. ("Mark"), and J. E. ("J."), through their

undersigned counsel, complain and allege against Defendant Blue Cross and Blue Shield of

Rhode Island ("BCBSRI") as follows:

## PARTIES, JURISDICTION AND VENUE

1. Candace and Mark are natural persons residing in Bristol County, Rhode Island. Candace

   and Mark are J.'s parents.

2. BCBSRI is an independent licensee of the nationwide Blue Cross and Blue Shield

   network of providers, and was the insurer and claims administrator for the insurance plan

   ("the Plan") providing coverage for Candace and J. during the treatment at issue.

1

3. The Plan is a fully-insured employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). Candace was a participant in the Plan and J. was a beneficiary of the Plan at all relevant times.

4. J. received medical care and treatment at Evoke at Entrada ("Evoke"), and Cascade Crest Transitions ("Cascade"). Evoke is located in Utah, and Cascade is located in Oregon. Both facilities provide sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

5. The Plan, acting through BCBSRI or through its agent Beacon Health Options, formerly known as ValueOptions, denied claims for payment of J.'s medical expenses in connection with his treatment at Evoke and Cascade. This lawsuit is brought to obtain the Court's order requiring BCBSRI to reimburse Candace and Mark for medical expenses they paid for J.'s treatment.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, and because a significant portion of the treatment at issue took place in Utah. Finally, in light of the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

8. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendant's violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

<u>**BACKGROUND FACTS**</u>

**J.'s Developmental History and Medical Background**

9.  J. was a very active child, and enjoyed outdoor activities such as BMX biking and baseball. J. suffered from attention deficit disorder and other learning disabilities which gave him a negative attitude towards academics, and made school difficult for him.

10. J. struggled with mental health problems, behavioral issues, substance abuse, and difficulties maintaining healthy relationships. For instance, J. stole money and lied about it. When J. became frustrated, he would yell and throw things. A few months before he began treatment at Evoke, he got angry with his girlfriend and shoved her.

11. J. habitually smoked marijuana, and was ordered by a judge to attend a drug abuse outpatient program for three months. J. used marijuana to self-medicate, and as a means of avoiding other problem areas in his life.

**Evoke**

12. As a result of J.'s behavioral and substance abuse problems, he was admitted to Evoke on June 29, 2015.

13. On March 1, 2016, BCBSRI sent Mark a letter denying payment for J.'s treatment at Evoke. The reviewer gave the following justification for the denial:

> …Blue Cross & Blue Shield of Rhode Island has thoroughly reviewed the request for coverage regarding a Wilderness Therapy Program.
>
> It has been determined that a Wilderness Therapy Program is excluded from coverage under your BCBS Rhode Island Commercial contract. It is your responsibility to pay for any excluded services and any related expenses. …

14. On August 24, 2016, Mark submitted a level one appeal of the denial of J.'s treatment at Evoke. He wrote that the Plan covered mental health and substance abuse services, including intermediate inpatient care rendered at substance abuse treatment facilities.

3

15. Mark contended that Evoke followed generally accepted standards of medical practice and was a licensed and accredited short-term intermediate level treatment facility that provided residential level care. He asserted that the nationwide Blue Cross Blue Shield network often covered wilderness treatment programs, and asked BCBSRI to disclose how often it had paid for wilderness treatment in other instances.

16. Mark argued that BCBSRI's denial was in violation of MHPAEA. He wrote that MHPAEA required insurance companies to provide mental health coverage "at parity" with comparable medical or surgical benefits covered by the Plan, and also prohibited insurance companies from imposing financial requirements or treatment limitations that did not also apply to comparable medical or surgical services covered by the Plan.

17. Mark argued that because Evoke was classified as an intermediate level mental health facility, and the Plan covered other intermediate level services such as skilled nursing facilities and rehabilitation facilities, BCBSRI could not impose benefit limitations such as an exclusion for wilderness facilities on J.'s treatment, because it did not impose comparable limitations on J.'s intermediate level medical or surgical benefits.

18. Mark wrote that the Plan was also subject to the Patient Protection and Affordable Care Act, ("ACA") which contained a non-discrimination provision prohibiting insurance companies from discriminating against a healthcare provider so long as they were acting within the scope of their licensure. He argued that Evoke was licensed by the State of Utah as an outdoor behavioral health program, and consequently payment for J.'s treatment should not have been denied.

19. On October 24, 2016, BCBSRI sent Mark a letter upholding the denial of J.'s treatment at Evoke. The reviewer gave the following justification for the denial:

> …I regret to inform you that I have denied your appeal. According to your Rhode Island School of Design HealthMate Coast-to-Coast Subscriber Agreement, under

section 3.3 Behavioral Health Services in the Related Exclusions section, this plan does NOT cover therapeutic recreation programs, extended stay/long term residential or wilderness programs. For your reference, I am including the pertinent pages of your subscriber agreement for your review.

Additionally, your subscriber agreement defines a Substance Abuse Treatment Facility as a hospital or facility which is licensed by the state in which it is located as a hospital or as a community residential facility for substance abuse and substance abuse treatment, unless we can establish through a pre-admission certification process that services are not available at a facility that meets these requirements.

Please note, your plan covers medically necessary services at an Acute Rehabilitation or Acute Substance Abuse Residential facility when reviewed by us and we decide that, at a minimum, the following criterion has been met:
…
- Program structure must include evidenced-based [sic] treatment at a minimum of six (6) hours of clinical programming per day Monday through Friday, and four (4) hours per day on weekends.
…

Evoke at Entrada was reviewed by Beacon Health Options and determined to be a wilderness program as it did not meet the program criterion of a Substance Abuse Treatment Facility as outlined in your agreement.

20. On January 3, 2017, Mark filed a complaint with the Rhode Island Department of Health ("RIDH") concerning the denial of J.'s treatment at Evoke. Mark alleged that BCBSRI had not given his appeal a full, fair, and thorough review as required by ERISA. He wrote that J.'s treatment at Evoke was medically necessary, covered by the Plan, and mandated by MHPAEA and ACA.

21. He argued that Evoke was licensed by the State of Utah as an outdoor behavioral health program, and that Evoke met the Plan's definition of a substance abuse treatment facility and provider, as well as the Plan's requirements for mental health and substance abuse coverage.

22. Mark asserted that BCBSRI violated ERISA when it failed to respond to his allegations that its actions were not in compliance with MHPAEA and ACA. He stated that BCBSRI "did not respond in any meaningful way", and simply insisted that coverage was not

5

available because the Plan did not cover services classified as wilderness programs. He argued that his appeal arguments and supporting evidence were not properly considered and "fell on deaf ears."

23. Mark wrote that BCBSRI had imposed additional requirements in its denial letter that were not present under the terms of the Plan. For instance, Mark argued that no provision existed in the Plan documents that: "Program structure must include evidenced-based [sic] treatment at a minimum of six (6) hours of clinical programming per day Monday through Friday, and four (4) hours per day on weekends" Although BCBSRI listed such a requirement in its denial letter.

24. Mark contended that the Plan defined a "provider" or a "substance abuse treatment facility" as entities that were licensed to provide treatment by the state in which they were located. Mark wrote that Evoke was a licensed facility, and it met the requirements of a substance abuse treatment facility according to the terms of the Plan. Mark argued that BCBSRI's assertion to the contrary in its denial letter had no merit, as Evoke had satisfied the State of Utah's licensing requirements.

25. On February 3, 2017, RIDH responded to Mark's complaint. The RIDH reviewer wrote that according to BCBSRI, wilderness therapy programs were listed as an excluded service under the terms of the Plan. BCBSRI stated that while Evoke was a licensed facility, it was licensed as a Youth Outdoor Program and not as a residential treatment facility.

26. The RIDH reviewer wrote that they had independently confirmed that Evoke described itself as a wilderness program. They stated that because of this classification as a wilderness treatment program, and because Evoke did not appear to meet the minimum

weekly hour requirements for therapeutic treatment listed by BCBSRI in its denial letter, RIDH would take no action to overturn BCBSRI's denial.

**Cascade**

27. J. was admitted to Cascade on September 14, 2015.

28. In a Healthcare Services Summary statement dated February 15, 2017, BCBSRI classified the services J. received at Cascade as custodial care, and denied payment for J.'s treatment under denial codes TF1 and W07:

    "TF1 –Claim submitted after 180-day filing limit.

    W07 –Submit a valid procedure code or modifier."

29. On July 7, 2017, Mark submitted a level one member appeal of the denial of payment for J.'s treatment at Cascade. Mark requested that all of the dates of J.'s treatment be evaluated, from his admission on September 14, 2015, through July 9, 2016.

30. Mark challenged BCBSRI's classification of J.'s treatment at Cascade as custodial care. He wrote that Cascade was an intermediate level treatment program for individuals with mental health and substance abuse problems, and did not offer custodial services.

31. Mark contested BCBSRI's assertion that J.'s claims for treatment had not been filed in a timely manner. He quoted the "HOW YOUR COVERED HEALTH CARE SERVICES ARE PAID" provision of the Plan which stated in part:

    You must file all *claims* within *one calendar year* of the date you receive a *covered health care service. Member* submitted *claims* that arrive after this deadline are invalid unless:

    - it was not reasonably possible for you to file your claim prior to the filing deadline; AND

    - you file your *claim* as soon as possible but no later than ninety (90) calendar days after the filing deadline lapses (unless you are legally incapable) (emphasis in original)

32. Mark wrote that under the terms of the Plan he had a full year –plus 90 days if circumstances warranted an exception– to file claims for payment. He argued that contrary to the terms of the Plan, BCBSRI had arbitrarily imposed a 180 day deadline to submit claims in its denial letter, but even under this metric, J.'s claims were submitted in a timely manner.

33. Mark stated that J.'s claims through January 31, 2016, were submitted on February 24, 2016. He contended that this would have rendered even the oldest claim, J.'s admission to Cascade on September 14, 2015, as only 163 days old, well within the deadline for timely filing as established by the terms of the Plan.

34. Mark stated that BCBSRI also denied payment due to an invalid procedure code or modifier. He wrote that J.'s claims were appropriately billed under revenue code 1003, "which is the universally accepted UB-04 revenue code for a supervised (transitional) living level of care."

35. Mark directed BCBSRI to pay for J.'s treatment, which he alleged to be denied in error. He requested that in the event the denial was maintained, that BCBSRI provide him with a copy of all governing plan documents, as well as any "mental health/substance abuse criteria including skilled nursing facility and rehab criteria utilized to evaluate the claim."

36. In a letter dated September 28, 2017, BCBSRI acknowledged that the previous denial for lack of timely filing was made in error, and directed Cascade to resubmit the claims so that they could be reevaluated.

37. On January 26, 2018, Mark filed a complaint against BCBSRI with the Rhode Island Office of the Health Insurance Commissioner ("OHIC"). Mark restated the issues he had raised in his July 7, 2017, level one appeal; arguing that J.'s claims were submitted in a timely manner and were submitted using the correct revenue codes. Mark wrote that he

had been waiting for more than 100 days with no response from BCBSRI, even though the Plan stipulated that a response was necessary after 60 days.

38. In a letter dated February 15, 2018, BCBSRI responded to Mark's complaint. BCBSRI acknowledged that payment for J.'s treatment had been improperly denied due to a mistaken classification of untimely filing, but also stated that "there were actually multiple reasons that the claims denied, but because of a system defect, only the first denial rationale was appearing on the member explanation of benefits…" BCBSRI also contended that it had not responded to Mark's appeal within 60 days because no response was due.

39. BCBSRI stated that it had sent Mark a set of revised explanation of benefits forms which, "indicate that the services in question have denied [sic] because [J.]'s policy excludes coverage for custodial care."

40. On February 23, 2018, OHIC sent Mark a letter informing him that it would not be taking action as a result of his complaint.

41. On March 27, 2018, Mark submitted a second level one appeal to BCBSRI of the denial of J.'s treatment at Cascade. Mark argued that he was entitled to a second level one appeal because BCBSRI had mishandled his initial appeal, and it had changed its rationale for denial in its Explanation of Benefits statements from care being denied due to lack of timely filing to: "K32-Custodial care is not covered by contract. Members should refer to their benefit documents."

42. Mark wrote that while he understood that the Plan did not cover treatment that was solely custodial in nature, Cascade did not provide custodial care services.

43. Mark asked that he be provided with the names and qualifications of the reviewers who evaluated J.'s treatment, as he was entitled to under ERISA.

44. Mark included a letter dated January 15, 2018, from J.'s therapist at Cascade, Corey May, MS, LPC, which contradicted BCBSRI's assertion that Cascade provided custodial care, it stated in part:

> …CCT is a long term (9-12 month) young adult traditional living environment that focuses on a combination of residential living, individual and group therapy, case management, as well as academic and vocational advising. CCT is a program that is focused on client driven goals and client based collaboration with the treatment plan.
>
> [J.] played an instrumental role in co creating his treatment plan and setting his own trajectory through the program and allowing us to support him in striving to find success in his journey. As a young adult, [J.] had many freedoms and a sense of autonomy, as our program is not of the custodial nature…

45. Mark contended that the services provided at Cascade did not meet the Plan's definition of custodial care, which the Plan defined as personal care to help with the activities of daily living, or nonmedical care rendered by unlicensed caregivers. Mark argued that Cascade met the Plan's definition of a facility offering behavioral health services, and that because the Plan covered comparable intermediate level medical and surgical benefits, MHPAEA compelled BCBSRI to provide coverage for J.'s treatment at Cascade.

46. Mark again requested a copy of all governing Plan documents, including any mental health or substance abuse criteria that were utilized to evaluate the claim, including criteria for skilled nursing and rehabilitation facilities.

47. On May 31, 2018, BCBSRI sent Mark a letter upholding the denial of J.'s treatment at Cascade. The reviewer gave the following justification for the denial:

> …I regret to inform you that I have denied this appeal. According to your RI School of Design HealthMate Coast-to-Coast Subscriber Agreement, section 4.6 entitled *Services Provided By Facilities That Are Not Approved*, this agreement does NOT cover custodial care, rest care, day care, or non-skilled care in any facility. The services rendered by Cascade Crest have been determined to be custodial care as indicated by the revenue code of 1003 on the claims submitted.

> There are no claims on file for this time period for mental health or substance abuse services. …

48. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

49. The denial of benefits for J.'s treatments was a breach of contract and caused Candace and Mark to incur and pay medical expenses that should have been paid by the Plan in an amount totaling over $98,000.

## **FIRST CAUSE OF ACTION**

### **(Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))**

50. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as BCBSRI, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. §1104(a)(1).

51. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

52. BCBSRI and the Plan breached their fiduciary duties to J. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in J.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of J.'s claims.

53. The actions of BCBSRI and the Plan in failing to provide coverage for J.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

<strong><u>SECOND CAUSE OF ACTION</u></strong>

<strong>(Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))</strong>

54. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA.

55. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

56. Specifically, MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

57. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

58. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for J.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does BCBSRI exclude or restrict coverage for medically necessary care of medical/surgical conditions based on medical management standards, geographic location, facility type, provider specialty, or other criteria in the manner BCBSRI excluded coverage of treatment for J. at Evoke and Cascade.

12

59. In this manner, the Defendant violates 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and BCBSRI, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

60. The actions of BCBSRI and the Plan, as outlined above, have caused damage to Candace and Mark in the form of denial of payment in an amount totaling over $98,000 for medical services provided to J.

61. The violations of MHPAEA by BCBSRI and the Plan give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

(a) A declaration that the actions of the Defendant violates MHPAEA;

(b) An injunction ordering the Defendant to cease violating MHPAEA and requiring compliance with the statute;

(c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendant to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

(d) An order requiring disgorgement of funds obtained by or retained by the Defendant as a result of its violations of MHPAEA;

(e) An order requiring an accounting by the Defendant of the funds wrongly withheld from participants and beneficiaries of the Plan and BCBSRI insured plans as a result of the Defendant's violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring the Defendant to provide payment to the Plaintiffs as make-whole relief for their loss;

(g) An order equitably estopping the Defendant from denying the Plaintiffs claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendant to the Plaintiffs for their loss arising out of the Defendant's violation of MHPAEA.

62. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for J.'s medically necessary treatment at Evoke and Cascade under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

3. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendant's violation of MHPAEA;

4. For such further relief as the Court deems just and proper.

DATED this 17th day of January 2019.

By     s/ Brian S. King
         Brian S. King
         Attorney for Plaintiffs

County of Plaintiffs' Residence:
Bristol County, Rhode Island.