IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CANDACE B., MARK E., and J.E.,<br><br>      Plaintiffs,<br><br>v.<br><br>BLUE CROSS and BLUE SHIELD of<br>RHODE ISLAND,<br><br>      Defendant. | **MEMORANDUM DECISION AND<br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANT'S<br>MOTION TO DISMISS**<br><br>Case No. 2:19-cv-00039<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

This action concerns a denial of benefits under the Employee Retirement Income Security Act (ERISA).[1] Plaintiffs Candace B., Mark E., and J.E., bring this action against Defendant Blue Cross and Blue Shield of Rhode Island (BCBSRI) claiming: (1) BCBSRI breached its fiduciary duties in denying benefits to J.E. and (2) BCBSRI violated the Mental Health Parity and Addiction Equity Act (Parity Act).[2] BCBSRI filed a Motion to Dismiss, arguing Plaintiffs' Parity Act claims should be dismissed.[3] For the reasons explained below, BCBSRI's Motion is GRANTED IN PART and DENIED IN PART.

---

[1] 29 U.S.C. § 1001 *et seq*.

[2] Dkt. 2 at 2, ¶ 8.

[3] Dkt. 19 at 2. BCBSRI's Motion also argues Mark E. does not have standing to pursue this action. Dkt. 19 at 24-25. In their Opposition, Plaintiffs agree to dismiss Mark E. as a plaintiff in this case. Dkt. 26 at 26. Therefore, BCBSRI's Motion with respect to Mark E.'s standing is MOOT. Mark E. is hereby removed as a plaintiff in this case.

## BACKGROUND[4]

The B. Family lives in Bristol County, Rhode Island.[5]  Candace and Mark are J.E.'s

parents.[6]  BCBSRI was the insurer and claims administrator for the insurance plan (the Plan)

providing coverage for Candace and J.E. during the treatment at issue here.[7]  Candace was a

participant in the Plan and J.E. was a beneficiary of the Plan at all relevant times.[8]

### I. EVOKE TREATMENT

J.E. was admitted to Evoke for treatment related to behavioral and substance abuse issues

on June 29, 2015.[9]

On March 1, 2016, BCBSRI sent Mark a letting denying payment for J.E.'s treatment at

Evoke.[10]  In its denial letter, BCBSRI stated "[i]t has been determined that a Wilderness Therapy

Program is excluded from coverage under [the Plan]."[11]

On August 24, 2016, Mark submitted a level one appeal of the denial of benefits for

J.E.'s treatment at Evoke.  In his appeal letter, Mark wrote that the Plan covered mental health

and substance abuse services, including intermediate inpatient care rendered at substance abuse

treatment facilities.[12]  Mark also wrote that, because Evoke was an intermediate level mental

---

[4] Because this case is before the court on a motion to dismiss, the court accepts as true all well-pled factual allegations contained in the Complaint.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[5] Dkt. 2 at ¶ 1.

[6] Dkt. 2 at ¶ 1.

[7] Dkt. 2 at ¶ 2.

[8] Dkt. 2 at ¶ 3.

[9] Dkt. 2 at ¶ 12.

[10] Dkt. 2 at ¶ 13.

[11] Dkt. 2 at ¶ 13.

[12] Dkt. 2 at ¶ 14.

health facility, the Plan could not impose an exclusion for wilderness facility because it did not impose a comparable limitation on J.E.'s intermediate level medical or surgical benefits.[13]

On October 24, 2016, BCBSRI sent Mark a letter upholding the denial of benefits for J.E.'s treatment at Evoke.[14] The denial letter explained the Plan "does NOT cover therapeutic recreation programs, extended stay/long term residential or wilderness programs."[15] The letter further explained the Plan "defines a Substance Abuse Treatment Facility as a hospital or facility which is licensed by the state in which it is located as a hospital or as a community residential facility for substance abuse and substance abuse treatment."[16] Additionally, the letter noted the Plan "covers medically necessary services at an Acute Rehabilitation or Acute Substance Abuse Residential facility" when BCBSRI determines the following criteria have been met: "Program structure must include evidence[]-based treatment at a minimum of six (6) hours of clinical programming per day Monday through Friday, and four (4) hours per day on weekends."[17] The letter concluded, "Evoke . . . was reviewed . . . and determined to be a wilderness program as it did not meet the program criterion of a Substance Abuse Treatment Facility."[18]

On January 3, 2017, Mark filed a complaint with the Rhode Island Department of Health (RIDH), alleging BCBSRI had not given his appeal a full, fair, and thorough review as required by ERISA.[19] Mark argued Evoke was licensed by the State of Utah as an outdoor behavioral

---

[13] Dkt. 2 at ¶ 17.

[14] Dkt. 2 at ¶ 19.

[15] Dkt. 2 at ¶ 19.

[16] Dkt. 2 at ¶ 19.

[17] Dkt. 2 at ¶ 19.

[18] Dkt. 2 at ¶ 19.

[19] Dkt. 2 at ¶ 20.

health program and Evoke met the Plan's definition of a substance abuse treatment facility.[20] Mark further argued BCBSRI had imposed additional requirements in its denial letter that were not present under the terms of the Plan.[21] Specifically, Mark argued there was no provision in the Plan requiring a substance abuse treatment facility to satisfy certain hourly programming criteria.[22] Instead, Mark argued Evoke was licensed in Utah and therefore it had satisfied the Plan's definition of substance abuse treatment facility.[23]

On February 3, 2017 RIDH responded to Mark's complaint.[24] RIDH wrote that, according to BCBSRI, wilderness programs were excluded under the terms of the Plan.[25] RIDH also noted that, according to BCBSRI, Evoke was licensed as a youth outdoor program, not a residential treatment facility.[26] RIDH further explained it had independently confirmed that Evoke described itself as a wilderness program.[27] RIDH concluded that, because Evoke was classified as a wilderness program and because Evoke did not appear to meet the hourly programming criteria prescribed by the Plan, it would take no action to overturn BCBSRI's denial.[28]

---

[20] Dkt. 2 at ¶ 21.

[21] Dkt. 2 at ¶ 23.

[22] Dkt. 2 at ¶ 23.

[23] Dkt. 2 at ¶ 24.

[24] Dkt. 2 at ¶ 25.

[25] Dkt. 2 at ¶ 25.

[26] Dkt. 2 at ¶ 25.

[27] Dkt. 2 at ¶ 26.

[28] Dkt. 2 at ¶ 26.

## II. CASCADE TREATMENT

Following treatment at Evoke, J.E. was admitted to Cascade for treatment on September 14, 2015.[29]

In a statement dated February 15, 2017, BCBSRI classified the treatment J.E. received at Cascade as custodial care.[30] BCBSRI denied payment for J.E.'s treatment at Cascade for failure to submit a claim within the required filing period and for failure to submit a valid procedure code.[31]

On July 7, 2017, Mark submitted a level one appeal of the denial of benefits for J.E.'s treatment at Cascade.[32] Mark challenged BCBSRI's classification of J.E.'s treatment at Cascade as custodial care, arguing Cascade was an intermediate level treatment program and did not offer custodial care services.[33] Mark also contested the timeliness of the claim and whether the claim was filed under a valid procedure code.[34] Additionally, Mark requested that, if BCBSRI maintained its denial of benefits, it provide him with a copy of all governing Plan documents and "mental health/substance abuse criteria including skilled nursing facility and rehab criteria utilized to evaluate the claim."[35]

---

[29] Dkt. 2 at ¶ 27.

[30] Dkt. 2 at ¶ 28.

[31] Dkt. 2 at ¶ 28.

[32] Dkt. 2 at ¶ 29.

[33] Dkt. 2 at ¶ 30.

[34] Dkt. 2 at ¶¶ 31–34.

[35] Dkt. 2 at ¶ 35.

In a letter dated September 28, 2017, BCBSRI acknowledged the denial for lack of timely filing was made in error and directed Cascade to resubmit the claims so they could be reevaluated.[36]

On January 26, 2018, Mark filed a complaint against BCBSRI with the Rhode Island Office of the Health Insurance Commissioner (OHIC).[37] Mark reasserted the arguments he made in his July 7, 2017 appeal, arguing the claim was timely filed using the correct revenue codes.[38]

In a letter dated February 15, 2018, BCBSRI responded to the complaint.[39] BCBSRI acknowledged it had mistakenly classified the claims for J.E.'s treatment at Cascade as untimely, but also stated there were multiple reasons the claim was denied and that those reasons did not appear on the explanation of benefits due to a system error.[40] Specifically, BCBSRI stated it had sent a revised explanation of benefits indicating that payment for J.E.'s treatment at Cascade was being denied because the Plan excludes coverage for custodial care.[41]

On February 23, 2018, OHIC sent Mark a letter stating it would not be taking any action as a result of the complaint.[42]

On March 27, 2018, Mark submitted a second level one appeal of the denial of benefits for J.E.'s treatment at Cascade.[43] Mark wrote that, while he understood the Plan did not cover custodial care, Cascade did not provide custodial care services.[44] Mark argued Cascade met the

---

[36] Dkt. 2 at ¶ 36.

[37] Dkt. 2 at ¶ 37.

[38] Dkt. 2 at ¶ 37.

[39] Dkt. 2 at ¶ 38.

[40] Dkt. 2 at ¶ 38.

[41] Dkt. 2 at ¶ 39.

[42] Dkt. 2 at ¶ 40.

[43] Dkt. 2 at ¶ 41.

[44] Dkt. 2 at ¶ 42.

Plan's definition of a facility offering behavioral health services and, because the Plan covered comparable intermediate level medical and surgical benefits, the Parity Act compelled BCBSRI to provide coverage for J.E.'s treatment at Cascade.[45]  Additionally, Mark again requested a copy of all governing Plan document and criteria used to evaluate the claim.[46]

On May 31, 2018, BCBSRI sent Mark a letter upholding the denial of benefits for J.E.'s treatment at Cascade.[47]  The letter reiterated that the Plan does not cover custodial care and stated, "[t]he services rendered by Cascade . . . have been determined to be custodial care as indicated by the revenue code . . . on the claims submitted."[48]

### III. PROCEDURAL HISTORY

Plaintiffs filed a Complaint with this court on January 17, 2019.[49]  The Complaint alleges two causes of action.  First, Plaintiffs seek recovery of benefits under 29 U.S.C. § 1132(a)(1)(B), arguing BCBSRI breached its fiduciary duties in denying benefits for J.E.'s treatments at Evoke and Cascade.[50]  Second, Plaintiffs seek redress under 29 U.S.C. § 1132(a)(3), arguing BCBSRI violated the Parity Act in denying benefits for J.E.'s treatment at Evoke and Cascade.[51]  On May 17, 2019, BCBSRI filed a Motion to Dismiss Plaintiffs' second cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6).[52]

---

[45] Dkt. 2 at ¶ 45.

[46] Dkt. 2 at ¶ 46.

[47] Dkt. 2 at ¶ 47.

[48] Dkt. 2 at ¶ 47.

[49] Dkt. 2.

[50] Dkt. 2 at ¶¶ 50-53.

[51] Dkt. 2 at ¶¶ 54-62.

[52] Dkt. 19.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."[53]  Under Rule 12(b)(6), a court must dismiss causes of action that "fail[ ] to state a claim upon which relief can be granted."[54]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[55]  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[56]  When evaluating a motion to dismiss, the court "accept[s] all well-pleaded facts [in the complaint] as true and view[s] them in the light most favorable to the plaintiff."[57]  However, the court will not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[58]  The reviewing court is required to "draw on its judicial experience and common sense" to evaluate whether the well-pled facts state a plausible claim for relief.[59]  "Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide [defendants] fair notice of what the . . . claim is and the grounds upon which it rests."[60]

---

[53] Fed. R. Civ. P. 8(a)(2).

[54] Fed. R. Civ. P. 12(b)(6).

[55] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[56] *Id.*

[57] *Jordan-Arapahoe, LLP v. Bd. of Cty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (citation omitted).

[58] *Iqbal*, 556 U.S. at 678.

[59] *Id.* at 679.

[60] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

# ANALYSIS

## I. PARITY ACT OVERVIEW

Congress enacted the Mental Health Parity Act (MHPA) in 1996, requiring group health plans to impose the same "aggregate lifetime and annual dollar limits for mental health benefits and medical and surgical benefits."[61]  Congress amended the MHPA in 2008, when it passed the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008.[62]

As amended, the Parity Act is designed "to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans."[63]  In general terms, a health plan that provides medical and surgical benefits as well as mental health or substance abuse benefits "cannot impose more restrictions on the latter than it imposes on the former."[64]  Relevant here, the Parity Act prohibits insurers from imposing "treatment limitations" on mental health or substance abuse claims that are more stringent than the treatment limitations imposed on medical or surgical claims.[65]

Treatment limitations can come in one of two forms: quantitative and nonquantitative.[66]  Quantitative treatment limitations are expressed numerically and would include treatment

---

[61] *Joseph F. v. Sinclair Servs.Co.*, 158 F. Supp. 3d 1239, 1259 (D. Utah 2016) (citation omitted).

[62] *Id.*

[63] *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016).

[64] *Michael W. v. United Behavioral Health*, No. 2:18-cv-00818, 2019 WL 4736937, at *16 (D. Utah Sept. 27, 2019) (citing 29 U.S.C. § 1185a(a)(3)(A)).

[65] *See Michael D. v. Anthem Health Plans of Ky. Inc.*, 369 F. Supp. 3d 1159, 1174 (D. Utah 2019); *see also* 29 C.F.R. § 2590.712(c)(2)(i) ("A group health plan (or health insurance coverage offered by an issuer in connection with a group health plan) that provides both medical/surgical benefits and mental health or substance use disorder benefits may not apply any financial requirement or treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant financial requirement or treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification.").

[66] *See* 29 C.F.R. § 2590.712(a).

limitations such as "50 outpatient visits per year."[67]  Nonquantitative treatment limitations are non-numerical treatment limitations that "otherwise limit the scope or duration of benefits for treatment under a plan."[68]  With respect to nonquantitative treatment limitations, the Parity Act's implementing regulations provide that a plan:

> may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless . . . any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical surgical/benefits in the classification.[69]

In other words, an insurer violates the Parity Act if it employs "a nonquantitative limitation for mental health treatment that is more restrictive than the nonquantitative limitation applied to medical health treatments."[70]

Parity Act violations can be alleged in the form of facial challenges or as-applied challenges.[71]  A facial challenge is based on the express terms of the plan, while an as-applied challenge is based on the plan administrator's application of the plan.[72]

To succeed on a Parity Act claim, a plaintiff must show: "(1) the relevant group health plan is subject to the Parity Act; (2) the plan provides both medical/surgical benefits and mental health or substance use disorder benefits; (3) the plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than medical/surgical benefits;

---

[67] *Id.*

[68] *Id.*

[69] *Id.* § 2590.712(c)(4)(i).

[70] *David S. v. United Healthcare Ins. Co.*, No. 2:18-CV-00803, 2019 WL 4393341, at *3 (D. Utah Sept. 13, 2019).

[71] *Id.*

[72] *J.L. v. Anthem Blue Cross*, No. 2:18-cv-00671, 2019 WL 4393318, at *2 (D. Utah Sept. 13, 2019).

and (4) the mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared."[73]  Generally speaking, the third and fourth prongs of this test present a more substantial pleading challenge for parties than the first two prongs.[74]  Accordingly, some courts have distilled the four-prong test into a two-part test: "To survive the dismissal of a Parity Act claim, a plaintiff must allege a medical or surgical analogue that the plan treats differently than the disputed mental health or substance abuse services."[75]

## II. PLAINTIFFS' PARITY ACT CLAIMS

Plaintiffs allege BCBSRI violated the Parity Act both when it denied coverage for J.E.'s treatment at Evoke and when it denied coverage for J.E.'s treatment at Cascade.[76]  BCBSRI does not dispute that the Plan is subject to the Parity Act.  Nor does BCBSRI dispute that the Plan provides both medical/surgical benefits and mental health/substance abuse benefits.  Instead, BCBSRI contends Plaintiffs failed to adequately plead that BCBSRI applied a treatment limitation to J.E.'s mental health and substance abuse claims in a way that was more restrictive than its application of treatment limitations to medical/surgical benefits.[77]

---

[73] *David S.*, 2019 WL 4393341, at *4 (quoting *Michael D.*, 369 F. Supp. 3d at 1174) (internal quotation marks omitted).  The court acknowledges the absence of binding Tenth Circuit precedent on the standard required to plead a Parity Act violation.  Accordingly, courts in this jurisdiction and others have applied a number of related, but distinct standards.  *See Michael W.*, 2019 WL 4736937, at *17–18 (collecting cases).  That said, the four-part test described above appears to be the predominant standard.  *See id.*, at *17.  And because the parties in this case proceed under the four-part test, the court chooses to proceed under that standard.

[74] *David S.*, 2019 WL 4393341, at *4.

[75] *Id.* (quoting *Timothy D. v. Aetna Health & Life Ins. Co.*, No. 2:18-CV-753, 2019 WL 2493449, at *3 (D. Utah June 14, 2019)) (internal quotation marks omitted).

[76] Dkt. 2 at ¶ 58.  The court notes that Plaintiffs' Parity Act claims with respect to Evoke and Cascade—while pleaded in the same cause of action, *see* dkt. 2 at ¶¶ 54–62—are properly construed as two independent causes of action.  The Parity Act claim with respect to Evoke implicates facts—such as the medical treatment and appeals processes involved—separate and distinct from those at issue with respect to Cascade.  Thus, while both claims allege violations of the Parity Act, they are properly thought of as two separate claims and the court will treat them as such.

[77] Dkt. 19 at 2.

For the reasons described below, the court disagrees with BCBSRI with respect to J.E.'s treatment at Evoke and agrees with BCBSRI with respect to J.E.'s treatment at Cascade.

## A. Evoke Treatment

Plaintiffs have adequately pleaded a facial challenge with respect to J.E.'s treatment at Evoke and therefore Plaintiffs' Parity Act claim with respect to the Evoke treatment survives Defendant's Motion to Dismiss.[78]

Plaintiffs allege the Plan's exclusion for wilderness programs violates the Parity Act because the exclusion, by the terms of the Plan, applies only to mental health and substance abuse benefits.[79]  Indeed, a review of the Plan confirms as much.[80]  The Plan contains references to wilderness programs in only two places.  The first is in the section listing exclusions related to mental health services.[81]  The second is in the section listing exclusions related to substance abuse treatment.[82]  No such reference is contained in the sections listing exclusions related to

---

[78] Plaintiffs also allege an as-applied Parity Act challenge with respect to the Evoke treatment. *See* dkt. 26 at 16. Having concluded Plaintiffs' facial challenge survives Defendant's Motion, the court need not address the as-applied challenge at this stage.  Rule 12(b)(6) motions are the proper procedural mechanism to dismiss part of a complaint, not part of a claim.  *See Redwind v. Western Union, LLC*, No. 3:18-cv-02094, 2019 WL 3069864, at *4 (D. Ore. June 21, 2019) (collecting cases for this proposition).  In other words, if part of a claim survives a rule 12(b)(6) motion, the entire claim survives.  *See Abraham P. v. Los Angeles Unified Sch. Dist.*, No. CV 17-3105-GW (FFMX), 2017 WL 4839071, at *6 (C.D. Cal. Oct. 5, 2017) ("This Court's practice is to not dismiss parts of claims at the FRCP 12(b)(6) stage because—unlike Rule 56, for example—FRCP 12(b)(6) speaks of a motion to discuss 'a claim,' not part of a claim. If the [defense] does not get rid of the entire claim, then it cannot be dismissed."). Because Plaintiffs' have adequately pleaded a facial challenge with respect to the Evoke treatment, Plaintiffs' Parity Act claim with respect to the Evoke treatment survives in its entirety.

[79] Dkt. 2 at ¶ 17.

[80] "In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits . . . and documents incorporated into the complaint by reference . . . ." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.).  "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation marks omitted).  Here, the Plan is attached as an exhibit to BCBSRI's Motion to Dismiss and is referred to in the Complaint.  Furthermore, the Plan is central to the Plaintiffs' claims.  Accordingly, the court may consider the Plan without converting BCBSRI's Motion into a motion for summary judgment.

[81] *See* Exhibit A at 50-51.

[82] *See* Exhibit A at 53.

specific medical or surgical benefits.[83]  Nor is such reference contained in the Plan's list of

general exclusions.[84]

Plaintiffs allege Evoke is an intermediate level mental health facility whose

medical/surgical analogue includes intermediate level services such as skilled nursing facilities

and rehabilitation facilities.[85]  Plaintiffs' argument, then, is the Plan violates the Parity Act

because a wilderness program exclusion applies to treatment at intermediate level mental health

and substance abuse facilities but not to analogous intermediate level medical/surgical

facilities.[86]

The court finds this sufficient at the pleading stage to satisfy the requirement that

Plaintiffs plead "a medical or surgical analogue that the plan treats differently than the disputed

mental health or substance abuse services."[87]  Plaintiffs have sufficiently identified treatment at

---

[83] *See* Exhibit A at 45-90.

[84] *See* Exhibit A at 91-99.  BCBSRI argues the exclusions for wilderness programs are "merely an example of the Plan's general exclusion for 'recreational therapy.'"  Dkt. 19 at 15.  In other words, BCBSRI argues the exclusions for wilderness programs applies equally to medical/surgical benefits because the exclusions for wilderness programs are actually born out of the Plan's general exclusion for recreational therapy.  But it is not clear from the Plan that this is the case.  First, the Plan's general exclusion for recreational therapy appears under the heading "Therapies, Acupuncture and Acupuncturist Services, and Biofeedback."  Exhibit A at 98.  It is included in a list alongside "aromatherapy," "aqua therapy," and "massage therapy."  Exhibit A at 98.  Given the nature of those exclusions, it seems unlikely that the exclusion for "recreational therapy" is also meant to encompass wilderness programs.  Wilderness programs seem different in kind than aromatherapy or massage therapy.  Moreover, the Plan contains cross-references for specific mental health and substance abuse benefit exclusions that are also listed as general exclusions.  For example, the Plan lists "telephone consultations" as a related exclusion to mental health and substance abuse services.  Exhibit A at 51, 53.  But that reference contains a cross-reference, "see Section 4.16," to the section containing a general exclusion for telephone consultations.  Exhibit A at 51, 53, 94.  This suggests that the Plan knows how to include general exclusions in the related exclusions specific to certain services.  Taken together, it is ambiguous at best whether the general exclusion for recreational therapy is meant to encompass wilderness programs.  Indeed, it seems likely that it does not.  It is the court's responsibility at the motion to dismiss stage is to evaluate whether the Complaint states a plausible claim for relief.  *See, e.g.*, *Iqbal*, 556 U.S. at 678.  And because there is a plausible reading of the Plan under which the wilderness program exclusion applies only to mental health and substance use benefits, the court rejects BCBSRI's argument that the exclusion applies equally to medical/surgical benefits.

[85] Dkt. 2 at ¶ 17.

[86] *See* dkt. 2 at ¶ 17; dkt. 26 at 11.

[87] *David S.*, 2019 WL 4393341, at *4.

an intermediate level mental health facility as the relevant mental health service and treatment at skilled nursing and rehabilitation facilities as the relevant medical/surgical analogue.[88]  And Plaintiffs have sufficiently identified the exclusion of wilderness camps as a nonquantitative treatment limitation.[89]  Furthermore, Plaintiffs have identified the wilderness program exclusion as applying to intermediate level mental health and substance abuse treatment but not to the analogous intermediate level medical/surgical treatment.  Therefore, Plaintiffs have adequately pleaded a facial Parity Act challenge with respect to the Plan.[90]

BCBSRI disputes this conclusion on the basis that "the Plan's blanket exclusion for . . . wilderness therapy does not violate the Parity Act because wilderness programs are excluded, not because of some arbitrary geographic limitation, but because they do not meet the Plan's criteria to qualify as residential treatment facilities."[91]  But it is not clear from either the Plan or

---

[88] Dkt. 2 at ¶ 17.  *See David S.*, 2019 WL 4393341, at *4 ("Plaintiffs adequately allege S.S.'s residential mental health treatment at Open Sky and Catalyst is analogous to medical health treatment at a skilled nursing facility.").

[89] *See* 29 C.F.R. § 2590.712(c)(4)(ii)(H) (providing illustrative list of nonquantitative treatment limitations).  The court notes Plaintiffs' Parity Act challenge bears similarities to Example 10 in the implementing rules.  Example 10 provides:

> Example 10. (i) Facts. A plan generally provides coverage for medically appropriate medical/surgical benefits as well as mental health and substance use disorder benefits. The plan excludes coverage for inpatient, out-of-network treatment of chemical dependency when obtained outside of the State where the policy is written. There is no similar exclusion for medical/surgical benefits within the same classification.

> (ii) Conclusion. In this Example 10, the plan violates the rules of this paragraph (c)(4). The plan is imposing a nonquantitative treatment limitation that restricts benefits based on geographic location. Because there is no comparable exclusion that applies to medical/surgical benefits, this exclusion may not be applied to mental health or substance use disorder benefits.

*Id.* § 2590.712(c)(4)(iii).

[90] *See Gallagher v. Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 258 (S.D.N.Y. 2018) (concluding plaintiff's allegation that a wilderness treatment exclusion applicable only to mental health benefits was "sufficient at the pleading stage to establish the third element of a Parity Act violation").  Indeed, on its face, the wilderness program exclusion applicable only to mental health and substance use disorders would appear to run afoul of the plain language of the Parity Act, which provides that plans providing both medical/surgical benefits and mental health and substance use disorder benefits "shall ensure that . . . there are no separate limitations that are applicable only with respect to mental health of substance use disorder benefits."  29 U.S.C. § 1185a(a)(3)(A)(ii).

[91] Dkt. 19 at 16.

BCBSRI's denials that this is the case. The Plan does not define "wilderness program," so it is unknown what criteria BCBSRI uses to evaluate whether something is a wilderness program. In response, BCBSRI points to its second denial letter, in which it stated "Evoke . . . was reviewed . . . and determined to be a wilderness program as it did not meet the program criterion of a Substance Abuse Treatment Facility as outlined in [the Plan]."[92] But this evaluation process does not appear to be dictated by the Plan itself.[93] Additionally, BCBSRI's second denial letter also contains a reference to certain hourly programming criteria required by the Plan for evaluating care at Acute Rehabilitation and Acute Substance Abuse Residential facilities.[94] This suggests that BCBSRI may have somehow incorporated those criteria into its determination that Evoke is a wilderness program. In any event, it is unclear exactly how BCBSRI determines whether a treatment facility is a wilderness program under the Plan. Furthermore, nothing in the Plan suggests a facility that otherwise qualifies as a Substance Abuse Treatment Facility under the Plan could not also be considered a wilderness program. In other words, it seems possible from the face of the Plan that even if Evoke otherwise met the Plan's definition of a Substance Abuse Treatment Facility, BCBSRI could nonetheless deny coverage for treatment at Evoke if it determined Evoke was a wilderness program. Because the Plan provides no guidance on how to define or evaluate wilderness programs, the court cannot say Plaintiffs have failed to adequately plead a facial challenge at this stage. As such, Defendants' Motion is denied with respect to Plaintiffs' Parity Act claim for J.E.'s treatment at Evoke.

---

[92] Dkt. 2 at ¶ 19.

[93] Additionally, BCBSRI's first denial letter does not reference any evaluation criteria for determining whether a treatment facility is a wilderness program. Dkt. 2 at ¶ 13. Instead, the denial simply states "[BCBSRI] has thoroughly reviewed the request for coverage regarding a Wilderness Therapy Program. It has been determined that a Wilderness Therapy Program is excluded from coverage under [the Plan]." Dkt. 2 at ¶ 13.

[94] Dkt. 2 at ¶ 19.

B. Cascade Treatment

In contrast to Plaintiffs' Parity Act claim with respect to J.E.'s treatment at Evoke,

Plaintiffs fail to adequately plead a Parity Act violation with respect to J.E.'s treatment at

Cascade.  BCBSRI denied coverage because it determined J.E.'s treatment at Cascade

constituted custodial care, which the Plan does not cover.[95]

Plaintiffs do not plead a facial challenge with respect to J.E.'s treatment at Cascade.

Instead, Plaintiffs argue in their Opposition that BCBSRI "applied the terms of the Plan more

stringently to [J.E.'s] treatment at Cascade denying it as 'custodial care.'"[96]  But the Complaint

fails to allege the facts necessary for the court to reasonably infer a violation of the Parity Act.

The Complaint does not identify any specific treatment limitation that BCBSRI applied to J.E.'s

Cascade claims that it would not apply to medical/surgical claims.  In other words, the

Complaint makes no comparison between limitations imposed on J.E.'s claim for treatment at

Cascade and limitations imposed on analogous medical/surgical benefits.  Instead, the Complaint

simply contains a threadbare recitation of the elements for a Parity Act claim.[97]  This is

insufficient to survive a motion to dismiss.[98]  Therefore, Plaintiffs' Parity Act claim with respect

to J.E.'s treatment at Cascade is dismissed without prejudice.

III. SIMULTANEOUS CLAIMS UNDER § 1132(a)(1)(B) AND § 1132(a)(3)

Having established that Plaintiffs have adequately pleaded a claim for violation of the

Parity Act—at least with respect to J.E.'s treatment at Evoke—the court now turns to BCBSRI's

argument that the Parity Act claim should be dismissed because adequate relief is available under

---

[95] *See* dkt. 2 at ¶ 47.

[96] Dkt. 26 at 19.

[97] Dkt. 2 at ¶ 58 (reciting required elements for a Parity Act challenge).

[98] *See, e.g.*, *Kerry W. v. Anthem Blue Cross & Blue Shield*, 2019 WL 2393802, at *4 (D. Utah June 6, 2019); *Anne M. v. United Behavioral Health*, 2019 WL 1989644, at *2 (D. Utah May 6, 2019).

29 U.S.C. § 1132(a)(1)(B). BCBSRI argues Plaintiffs' Parity Act claim "is merely a repackaged benefits claim under the guise of [a Parity Act] claim."[99] Plaintiffs respond that their Parity Act claim cannot be remedied under § 1132(a)(1)(B) and therefore their request for relief pursuant to § 1132(a)(3) is proper. For the reasons stated below, the court concludes Plaintiffs should be permitted to proceed with their Parity Act claim at this stage.

This court has explained "Congress enacted the Parity Act as an amendment to ERISA, making it enforceable through a cause of action under 29 U.S.C. § 1132(a)(3) as a violation of a 'provision of this subchapter.'"[100] Plaintiffs in this case seek to do just that. But BCBSRI argues a claim cannot be brought pursuant to § 1132(a)(3) when a plaintiff also brings a claim for denial of benefits pursuant to § 1132(a)(1)(B).[101] In support of this proposition, BCBSRI relies primarily on the Supreme Court's opinion in *Varity Corp v. Howe*[102] and the Tenth Circuit's opinion in *Lefler v. United Healthcare of Utah, Inc.*[103]

In *Varity*, the Supreme Court recognized that § 1132(a)(3) "authorizes '*appropriate*' equitable relief."[104] The Supreme Court continued, "[w]e should expect that courts, in fashioning 'appropriate' equitable relief, will keep in mind the 'special nature and purpose of employee benefit plans,' and will respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others.'"[105] Thus, the Supreme Court concluded, "we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there

---

[99] Dkt. 19 at 23.

[100] *Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1259 n.118 (D. Utah 2016) (citation omitted).

[101] Dkt. 19 at 21-24.

[102] 516 U.S. 489 (1996).

[103] 72 F. App'x 818 (10th. Cir. 2003) (unpublished).

[104] *Varity*, 516 U.S. at 515.

[105] *Id.* (citation omitted).

will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"[106]

In *Lefler*—an unpublished opinion—the Tenth Circuit affirmed the district court's grant of summary judgment in which the district court ruled the plaintiffs could not simultaneously bring a denial of benefits claim under § 1132(a)(1)(B) and a claim for breach of fiduciary duty under § 1132(a)(3).[107] The plaintiffs in *Lefler* claimed the insurer had breached its fiduciary duty by failing to inform the plaintiffs of its discounting practices and by "improperly denying, de facto, benefits under the plan" and therefore they were entitled to equitable relief under § 1132(a)(3).[108] Citing *Varity*, the Tenth Circuit disagreed, concluding that "consideration of a claim under 29 U.S.C. 1132(a)(3) is improper when the [plaintiffs], as here, state[] a cognizable claim under 29 U.S.C. § 1132(a)(1)(B), a provision which provides adequate relief for [the] alleged . . . injury."[109]

BCBSRI argues Plaintiffs' Parity Act claim is simply a repackaged denial of benefits claim and therefore *Varity* and *Lefler* mandate dismissal of the Parity Act claim because Plaintiffs' § 1132(a)(1)(B) denial of benefits claim provides adequate relief for their injury.[110] Plaintiffs respond that BCBSRI's reliance on *Varity* and *Lefler* is misplaced and that BCBSRI does not sufficiently explain how § 1132(a)(1)(B) provides adequate relief for Plaintiffs' Parity Act claim.[111] At this juncture, the court is inclined to agree with Plaintiffs.

---

[106] *Id.*

[107] *Lefler*, 72 F. App'x at 826.

[108] *Id.*

[109] *Id.*

[110] Dkt. 19 at 23.

[111] Dkt. 26 at 23-26.

Plaintiffs' Parity Act claim, while based on very similar facts to the denial of benefits claim, seeks relief that is equitable in nature and properly sought under a § 1132(a)(3) claim. For example, Plaintiffs' Parity Act claim seeks an order requiring an injunction, reformation, disgorgement, surcharge, and estoppel.[112] These are remedies that were traditionally available only in equity.[113] Or stated differently, they are remedies that are not available under § 1132(a)(1)(B).[114]

Furthermore, the text of ERISA differentiates between a § 1132(a)(1)(B) claim for recovery of benefits "under the terms of the plan"[115] and a § 1132(a)(3) claim for equitable relief to "obtain other appropriate equitable relief . . . to redress [ERISA] violations or . . . to enforce any provisions of [ERISA]."[116] This structure suggests claims stemming from an alleged Parity Act violation are properly brought under section § 1132(a)(3).[117] Accordingly, it is not clear from the text of ERISA that § 1132(a)(1)(B) could provide adequate relief for Plaintiffs' Parity Act claim.[118]

Additionally, Plaintiffs' wrongful denial of benefits claim and Parity Act claim, while based on similar facts, may represent two different injuries.[119] As Plaintiffs explain in their

---

[112] Dkt. 2 at ¶ 61.

[113] *See CIGNA Corp. v. Amara*, 563 U.S. 421, 440–42 (2011).

[114] *See id.* at 435–36 (explaining that reformation, for example, is not an available remedy under § 1132(a)(1)(B)).

[115] 29 U.S.C. § 1132(a)(1)(B).

[116] *Id.* § 1132(a)(3).

[117] *See also Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1259 n.118 (D. Utah 2016) (citation omitted).

[118] Indeed, it seems possible a plan administrator could deny benefits "under the terms of the plan" but the terms of the plan themselves could constitute violations of the Parity Act. In other words, the denial itself might not be wrongful "under the terms of the plan" but those terms could be independently wrongful under the Parity Act. In such a situation, the § 1132(a)(3) claim could well be necessary to a plaintiff seeking relief.

[119] Courts in this Circuit have permitted simultaneous § 1132(a)(1)(B) and § 1132(a)(3) claims in cases in which the injuries alleged under each section are distinct. *See Shore v. Procter & Gamble Health & Long-Term Disability Plan*, No. 2:18-cv-02294, 2018 WL 5045193 (D. Kan. Oct. 17, 2018); *Williams v. FedEx Corp. Servs.*, 2:13-cv-37, 2015 WL 248570 (D. Utah Jan. 20, 2015).

Opposition, even if the court ruled that BCBSRI wrongly denied benefits under the terms of the Plan, the question of whether the Plan—or BCBSRI's implementation of the Plan—violates the Parity Act may still remain to be decided.[120] It could be the case Plaintiffs are made whole in terms of monetary relief under their wrongful denial of benefits claim, but moving forward Plaintiffs could still be subject to terms of the Plan or operation of the Plan that violate the Parity Act. In other words, Plaintiffs' monetary injury would be relieved but Plaintiffs' injury of being subject to a plan whose coverage is violative of the Parity Act would remain unremedied.

Taken together, the court concludes dismissal of Plaintiffs' Parity Act claim as being duplicative of their denial of benefits claim would be inappropriate at this time. While *Lefler* interpreted *Varity* to authorize dismissal of § 1132(a)(3) claims when adequate relief is afforded under § 1132(a)(1)(B), it simply is not clear that adequate relief exists under § 1132(a)(1)(B) for Plaintiffs' Parity Act claim at this stage. As such, this court does not understand *Lefler* to mandate dismissal of Plaintiffs' Parity Act claim.[121]

As Plaintiffs acknowledge, they are not entitled to a double recovery.[122] Thus, if the court is able to determine at a later time Plaintiffs do have a cognizable claim and adequate relief

---

[120] Dkt. 26 at 24.

[121] *See Smith v. Liberty Life Assurance Co. of Boston*, 2018 WL 4635983, at *3 (D. Colo. Sept. 27, 2018) ("Although *Lefler* does not mandate the dismissal of parallel § 1132(a)(3) claims at the pleadings stage, district courts in this Circuit have relied on *Varity* and *Lefler* to dismiss § 1132(a)(3) claims that are duplicative of denial-of-benefits claims under § 1132(a)(1)(B).").

[122] Dkt. 26 at 24.

available under § 1132(a)(1)(B), then dismissal or denial of the Parity Act claim may become

appropriate.[123]  But at this stage, the court will allow Plaintiffs to proceed with both claims.[124]

## CONCLUSION

For the reasons stated above, BCBSRI's Motion to Dismiss[125] is GRANTED IN PART

and DENIED IN PART.

**SO ORDERED** this 25th day of March, 2020.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[123] *See New York State Psychiatric Ass'n, Inc. v. United Health Grp.*, 798 F.3d 125, 135 (2d Cir. 2015) ("Based on our review of the amended complaint, Denbo appears to request monetary compensation for any losses resulting from United's violations of the Parity Act and ERISA, and declaratory and injunctive relief prohibiting United from violating the Parity Act and ERISA in the future. These forms of relief 'closely resemble[ ]' the traditional equitable remedies of injunctive relief and surcharge. . . . But the amended complaint is not altogether clear about the source of Denbo's monetary losses. If Denbo seeks true equitable relief—such as losses flowing from United's breach of fiduciary duty—the relief sought would 'resemble[ ]' the remedy of surcharge, and would therefore be available to him under § 502(a)(3), ERISA's provision for equitable remedies. . . . If, on the other hand, the relief Denbo seeks is merely monetary compensation resembling legal damages—such as compensation that would neither redress a loss flowing from United's breach of fiduciary duty nor prevent United's unjust enrichment—the relief sought would be unavailable as an equitable remedy under § 502(a)(3).").  This would comport with *Lefler*, which prohibits consideration of a claim for equitable relief under § 1132(a)(3) when § 1132(a)(1)(B) provides adequate relief for the injury alleged.

[124] This is consistent with the result reached in other cases in this district.  *See, e.g., Christine S. v. Blue Cross Blue Shield of New Mexico*, No. 2:18-cv-00874, 2019 WL 6974772 (D. Utah Dec. 19, 2019).  This is also consistent with the approach courts have taken in other Circuits in the wake of the Supreme Court's ruling in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011).  *See, e.g., Moyle v. Liberty Mutual Retirement Benefit Plan*, 823 F.3d 948 (9th Cir. 2016); *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711 (8th Cir. 2014).  A helpful—and very thorough—discussion of the interplay between *Varity*, *Amara*, *Lefler*, and the Parity Act can be found in *Christine S.*, 2019 WL 6974772, at **5–17.

[125] Dkt. 19.